IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| American Association of Cosmetology Schools,<br>  9927 E. Bell Road, Suite 110<br>  Scottsdale, Arizona  85260<br><br>                              Plaintiff,<br><br>             v.<br><br>Elisabeth DeVos, Secretary of Education,<br>  400 Maryland Avenue, SW<br>  Washington, DC  20202<br><br>                              Defendant. | Civil Action No. |

## COMPLAINT

This is an action under the Administrative Procedure Act for declaratory relief from Gainful Employment ("GE") regulations of the U.S. Department of Education, 34 C.F.R. Part 668 Subpart Q, as applied to member schools of the American Association of Cosmetology Schools.  The GE regulation assesses the outcomes of educational programs based on the ratio of graduates' educational debt to earnings.  Although the Department acknowledges that some graduates of cosmetology programs underreport their incomes, the Department has made no provision for such underreporting in its regulations.  Accordingly, the regulations may improperly force cosmetology programs to close that are doing an excellent job of preparing students for gainful employment in the cosmetology field.  Therefore, the regulations are arbitrary and capricious as applied to cosmetology schools.

## Parties

1. Plaintiff is the American Association of Cosmetology Schools ("AACS"). AACS is a national, non-profit association open to accredited, proprietary schools of cosmetology arts and sciences. Its membership is comprised of schools offering one or more of cosmetology, skincare, nail technician, barbering, make-up and massage training educational programs (together, "cosmetology programs").

2. Defendant is Elisabeth DeVos, Secretary of the United States Department of Education (the "Department" or "DOE"). She is being sued in her official capacity.

## Jurisdiction

3. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331, as this matter arises under the laws of the United States, specifically the Administrative Procedure Act, 5 U.S.C. § 706.

## Venue

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1), as the defendant is located in this district.

## Statutory and Regulatory Background

5. A primary purpose of Title IV of the Higher Education Act of 1965 ("HEA") is to assist in making available the benefits of postsecondary education to eligible students through federal student aid. 20 U.S.C. § 1070(a).

6. The HEA provides requirements for schools participating in Title IV HEA student aid programs, including requiring that they be authorized in the state in which the school operates and that the school be accredited by an agency recognized by the Secretary. 20 U.S.C. § 1001(a)(2), (5), 1002(b)(1)(B), (D), (c)(1)(B).

7. Title IV of the HEA further protects students and the taxpayers against programs with high federal student debt default rates by prohibiting the participation of schools with cohort default rates above specified levels.

8. Title IV provides financial aid to students attending programs offered by proprietary institutions that prepare students for gainful employment in a recognized occupation ("GE programs").  20 U.S.C. § 1002(b)(1)(A).

9. AACS members are predominantly proprietary institutions of higher education as defined in the HEA.

10. Although the term "gainful employment" has been in the HEA since its enactment, the Department did not attempt to promulgate regulations interpreting that term until 2009.

11. In a rulemaking begun in 2009 that resulted in the publication of a final rule in 2011, the Department attempted to determine if a GE program provided for gainful employment by looking at a debt-to-earnings test and a loan-repayment test.  76 Fed. Reg. 34,386 at 34,448 (June 13, 2011).

12. This Court struck down that rule. *Association of Private Sector Colleges and Universities* v. *Duncan*, 870 F. Supp. 2d 133 (DDC 2012).

13. The Department did not appeal this Court's ruling.

14. Instead, the Department promulgated a new set of regulations that purport to interpret the "gainful employment" language in the HEA.  79 Fed. Reg. 64890 (October 31, 2014).

15. The current GE regulations compare the median annual loan payment of a GE program's recent graduates who received Title IV program assistance to the higher of the mean or median annual earnings of those graduates as reported by the Social Security Administration ("SSA") to

calculate an annual earnings rate and discretionary income rate ("D/E Rates"). 34 C.F.R. §§ 668.402-04.

16. The D/E Rates are calculated based on a cohort of students who graduated in a two-year period — the third and fourth award years prior to the most recent award year — or, if that two-year cohort contains fewer than 30 graduates, a four-year period. 34 C.F.R. §§ 668.402, 404(b)-(d).

17. A graduate's annual loan payments in the D/E Rates is calculated by amortizing the graduate's median loan debt over a 10-year repayment period for certificate and associate degrees, 15 years for bachelor and masters degrees and 20 years for doctoral and first professional degrees. 34 C.F.R. § 668.404(b)(2).

18. A GE program passes if the annual earnings rate is less than or equal to 8% or the discretionary income rate is less than or equal to 20%. 34 C.F.R. § 668.403(c)(1).

19. A GE program fails if the annual earnings rate exceeds 12% and the discretionary income rate exceeds 30%. 34 C.F.R. § 668.403(c)(2).

20. A GE program is "in the zone" if it falls between the passing and failing thresholds.

21. A GE program that fails twice in any three consecutive years for which D/E Rates are calculated for that program loses Title IV eligibility. 34 C.F.R. § 668.403(c)(4)(i).

22. A GE program loses eligibility if in each of four consecutive years for which D/E Rates are calculated for that program it is either in the zone or failing. 34 C.F.R. § 668.403(c)(4)(ii).

23. A school cannot reestablish eligibility for a GE program (or establish eligibility for a "substantially similar" program) that has lost eligibility under these regulations for three years. 34 C.F.R. § 668.410(b)(2)(i), (iv).

24. Schools with a failing GE program that may lose eligibility the following year if the program fails again must provide warnings to current and prospective students as follows: "This program has not passed standards established by the U.S. Department of Education. The Department based these standards on the amounts students borrow for enrollment in this program and their reported earnings. If in the future the program does not pass the standards, students who are then enrolled may not be able to use federal student grants or loans to pay for the program, and may have to find other ways, such as private loans, to pay for the program." 34 C.F.R. § 668.410(a)(2)(i).

25. Schools with a zone GE program that may lose eligibility the following year if the program has a zone or failing rate for a fourth consecutive award year must provide the same warning.

26. In addition to providing warnings, the school must also refer students and prospective students to (and include an internet link for) College Navigator, its successor site, or another similar federal resource, for information about other similar educational programs offered at other institutions. 34 C.F.R. § 668.410(a)(2)(ii). The school must provide the warning on the school's website and in promotional materials. 34 C.F.R. § 668.410(a)(2)(iii)(7).

27. The Department issued the first set of final D/E Rates for each GE program, referred to by the Department as Debt Measure Year 2015 GE D/E Rates (below, "2015 D/E Rates"), on or about January 9, 2017.

28. The 2015 D/E Rates published by the Department on or about January 9, 2017 use aggregate mean or median calendar year 2014 earnings for students in a GE program who graduated during the 2010-11 and 2011-12 award year as reported for those graduates to the SSA

(or, if that two-year cohort contains fewer than 30 graduates, includes graduates for a four-year period including the 2008-2009 and 2009-2010 award years). 34 C.F.R. §§ 668.402, 404(b)-(d).

29. The GE regulations establish limited grounds under which a school may appeal the 2015 D/E Rates.

30. To challenge the annual earnings portion of the 2015 D/E Rates, a school must submit an alternate earnings appeal to request recalculation of the GE program's rates. 34 C.F.R. § 668.406(a). Such appeals must rely on either (1) an institutional survey of a GE program's graduates, or (2) a state-sponsored data system. 34 C.F.R. § 668.406(b).

31. To pursue an alternate earnings appeal of the 2015 D/E Rates issued on or about January 9, 2017, schools had to submit a notice of intent to submit an appeal within 14 days of issuance of the final rates or by January 23, 2017.

32. To pursue an appeal, a school must submit all certifications and specified supporting documentation related to the appeal no later than 60 days after the Secretary issues the notice of determination informing the school of the 2015 D/E Rates, or by March 10, 2017.

<u>The Data Relied Upon by the Regulations Undercounts Cosmetology Graduates' Income</u>

33. The GE regulations rely solely on SSA data for the Department's determination of GE program graduates' annual earnings for calculation of both the draft and final 2015 D/E Rates.

34. The GE regulations state expressly that the Secretary will not consider in a challenge to the draft D/E Rates any objection to the mean or median annual earnings that SSA provided to the Secretary. 34 C.F.R. § 668.405(f)(3)(i).

35. SSA data is known to undercount the income of self-employed individuals.

36. SSA data is known to particularly undercount the income of self-employed individuals whose revenues include a significant portion of cash.

37. SSA data is known to undercount the income of individuals who receive significant portions of their income in the forms of gratuities, particularly when those gratuities are paid with cash.

38. SSA data undercounts the income for individuals in the categories noted in pars. 35-37 above because SSA relies on the individuals receiving such income to self-report it. Such individuals, however, have an incentive to underreport such income in order to reduce their federal and state payroll tax liabilities. In addition, such self-reporting places a material record-keeping burden on the individuals receiving such income. Notwithstanding laws requiring accurate reporting of self-employment and gratuity income, as a group, individuals receiving such income tend to underreport it either because of a lack of accurate records or in order to reduce their tax liability. This underreporting is particularly prevalent where a significant portion of the income is received in cash, making it more difficult to trace to the individual receiving it.

39. The only two bases for submitting an alternate earnings appeal permitted by the GE regulations also rely on self-reporting of income by individuals. Accordingly, the data obtained from these alternatives will also underreport the earnings of such individuals.

40. The institutional survey alternative ameliorates the impact of some potential concerns regarding payroll tax liability through assurances to responding program graduates that their responses will not be shared with taxing authorities. But such confidentiality cannot completely address such concerns. Moreover, such confidentiality does not address the tendency of individual receiving significant portions of their incomes in cash and through gratuities to underreport such income due to imprecise record keeping.

41. In addition, the alternative of developing an institutional survey permitted by the GE regulations is costly and burdensome on schools with GE programs.

42. Further, in many states, there is no alternative state-sponsored data system containing annual earnings data for individuals in the measured cohort. Accordingly, this basis for submitting an alternate earnings appeal is unavailable to some schools.

43. Graduates of GE programs that prepare students for cosmetology related occupations tend to be self-employed. Such self-employment includes individuals who "rent a chair" at a salon.

44. Cosmetology program graduates tend to receive a significant portion of their incomes in the form of gratuities.

45. Cosmetology program graduates tend to receive a significant portion of their incomes in cash.

46. Because of the attributes of cosmetology program graduates noted in pars. 43-45 and the fact that SSA data undercounts the income of individuals with such attributes, SSA data undercounts the income of cosmetology program graduates as a group.

47. The Secretary was informed of this well-known reported income gap phenomenon by numerous commenters during the rulemaking leading to promulgation of the GE regulations.

48. In addition, the Secretary was informed that this reported income gap phenomenon is particularly prevalent among cosmetology program graduates.

49. In its publication of the GE regulations as a final rule, the Department acknowledged the reported income gap. In particular, the Department "acknowledge[d] that some self-employed individuals may fail to report, or underreport, their earnings" despite the fact that such individuals are legally required to report such income if they earn $400 or more in a taxable year

and would be subject to penalties and criminal prosecution if they fail to do so.  79 Fed. Reg. at 64955.

50.  Notwithstanding its acknowledgement of the reported income gap phenomenon, the Department failed to substantively address the issue so as to either justify the use of such seriously flawed data or to ameliorate the impact of the income gap on the 2015 D/E Rates calculated for cosmetology programs.

51.  The Secretary was informed of multiple alternatives to reliance on self-reported income by numerous commenters during the rulemaking leading to promulgation of the GE regulations.

52.  Notwithstanding the Secretary being informed of such alternatives, the Secretary essentially ignored them in the promulgation of the final GE regulations.

<u>The GE Regulations Are Arbitrary and Capricious As Applied to Cosmetology Programs</u>

53.  This Court must enjoin agency action that is arbitrary and capricious, an abuse of discretion, inconsistent with substantial evidence or otherwise contrary to law.  5 U.S.C., § 706(2).

54.  The Department's GE regulations are arbitrary and capricious as applied to cosmetology programs because the SSA data on which the regulations rely is known to underreport the income of cosmetology program graduates.

55.  The Department's GE regulations are arbitrary and capricious as applied to cosmetology programs because the Department failed to adequately take into account the underreporting of cosmetology program graduates' income in the SSA data used.

56.  The Department's GE regulations are arbitrary and capricious as applied to cosmetology programs because the Department failed to reasonably consider alternatives to the flawed SSA income data for the graduates of cosmetology programs.

<u>Prayer for Relief</u>

Plaintiff requests the following relief:

A. Declare that the Department's GE regulations are arbitrary and capricious as applied to plaintiff's members' schools.

B. Enjoin the defendant from enforcing the Department's GE regulations against plaintiff's members' schools.

C. Afford such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: February 10, 2017

/s/ Robert L. Shapiro
Robert L. Shapiro, DC Bar No 415854
Edward Cramp (*pro hac vice* application forthcoming)
Drew T. Dorner, DC Bar No 1035125
Duane Morris LLP
505 Ninth Street, NW
Washington, DC 20004
(202) 776-7867 (Telephone)
(202) 330-5260 (Facsimile)
Counsel for Plaintiff