IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN ASSOCIATION OF COSMETOLOGY SCHOOLS, | ) ) ) ) | Civil Action No. 1:17-263 (RC) |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| ELIZABETH DEVOS, in her official capacity as Secretary of Education, | ) ) ) |  |
| Defendant. | ) ) |  |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION .................................................................................................... 1

ARGUMENT .......................................................................................................... 3

    I.      PLAINTIFF'S AS-APPLIED APA CLAIM FAILS AS A MATTER OF LAW . 3

        A.    Plaintiff Fails to Identify a Final Agency Action that Can Support Its Asserted As-Applied APA Claim ............................................................. 3

            1.    The 2014 Final Rule Does Not Qualify as a Final Agency Action for Purposes of Plaintiff's As-Applied Claim ................................ 4

            2.    Plaintiff Cannot Rely on the D/E Rates Issued in January 2017 as the Final Agency Action for An As-Applied Claim ...................... 6

            3.    Plaintiff Cannot Avoid the Final Agency Action Requirement by Claiming that the Nature of Its Challenge, or the Challenged Action, Is Irrelevant ..................................................................... 8

        B.    Plaintiff Fails to Show that the Department's Use of SSA Data, Absent a Successful Alternate Earnings Appeal, Is Arbitrary or Capricious ......... 10

CONCLUSION ..................................................................................................... 16

# **TABLE OF AUTHORITIES**

## **Cases**

*Alaska Legislative Council v. Babbitt*, 15 F. Supp. 2d 19 (D.D.C. 1998) ..................................... 4

*Am. Pub. Gas Ass'n v. Fed. Power Comm'n*, 567 F.2d 1016 (D.C. Cir. 1977) ......................... 16

*Appalachian Power Co. v. EPA,* 251 F.3d 1026 (D.C. Cir. 2001) ............................................. 13

*APSCU v. Duncan* ("*APSCU II*"), 681 F.3d 427 (D.C. Cir. 2012) ............................................. 9

*\*APSCU. v. Duncan* ("*APSCU III*"), 110 F. Supp. 3d 176 (D.D.C. 2015),
     *aff'd*, No. 15-5190, 640 Fed. Appx. 5 (D.C. Cir. Mar. 8, 2016)
     ("*APSCU IV*") (unpublished)...................................................... 5, 9, 10, 11, 12

*Bennett v. Spear*, 520 U.S. 154 (1997) .................................................................................. 4, 8

*Cellular Telecomms. & Internet Ass'n v. FCC,* 330 F.3d 502 (D.C. Cir. 2003) .......................... 4

*\*Dist. Hosp. Partners, L.P. v. Burwell,* 786 F.3d 46, 56–57 (D.C. Cir. 2015) ..................... 10, 11

*FTC v. Standard Oil Co.*, 449 U.S. 232 (1980) ....................................................................... 7, 8

*ILGWU v. Donovan*, 722 F.2d 795 (D.C. Cir. 1983) ........................................................... 13, 14

*Leather Indus. of Am., Inc. v. EPA*, 40 F.3d 392 (D.C. Cir. 1994) ....................................... 13, 14

*Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990) ................................................................. 8, 9

*Mt. Diablo Hosp. v. Shalala*, 3 F.3d 1226 (9th Cir. 1993) ........................................................ 16

*\*Nat'l Wildlife Fed'n v. EPA*, 945 F. Supp. 2d 39 (D.D.C. 2013) ........................................... 4, 9

*Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554 (D.C. Cir. 2002) ..................................................... 13

*Wise v. Glickman*, 257 F. Supp. 2d 123 (D.D.C. 2003) ............................................................... 6

*W. Wood Preservers Inst. v. McHugh*, 292 F.R.D. 145 (D.D.C. 2013) ........................................ 8

## **Statutes**

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 ................................................ 1, 3

5 U.S.C. § 704 ........................................................................................................................ 3, 9

5 U.S.C. § 706 ................................................................................................................ 3, 9

Higher Education Act ("HEA") Title IV, 20 U.S.C. §§ 1070 *et seq.* ........................................... 1

**<u>Regulations</u>**

Final regulations ("2014 Final Rule"),
    79 Fed. Reg. 64890 (Oct. 31, 2014) ....................................................................... *passim*

34 C.F.R. § 668.405 .......................................................................................................... 5

34 C.F.R. § 668.406 ................................................................................................... 5, 7, 8

34 C.F.R. § 668.409 .......................................................................................................... 7

34 C.F.R. § 668.410 ................................................................................................... 7, 8

**<u>INTRODUCTION</u>**

Plaintiff has failed to establish its entitlement to judgment as a matter of law in its purported as-applied challenge, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, to gainful employment ("GE") regulations promulgated by the Department of Education ("Department" or "Defendant") under Title IV of the Higher Education Act of 1965 ("HEA"). Plaintiff seeks to challenge the Department's use of Social Security Administration ("SSA") data in its debt-to-earnings ("D/E") rate calculations when applying the GE regulations to cosmetology programs. However, the only final agency action identified in Plaintiff's Complaint or opening brief was the Department's 2014 Final Rule promulgating the GE regulations, which does not qualify as a final agency action for Plaintiff's as-applied challenge.

In its Reply, Plaintiff attempts to hedge its bets by arguing that the Department's 2014 Final Rule, as well as its January 2017 issuance of notices of determination containing debt-to-earnings ("D/E") rates for specific programs, both qualify as final agency actions, and that the Court need not choose between them, nor decide whether Plaintiff's claim qualifies as facial or as-applied. However, the 2014 Final Rule does not represent the Department's final decision to use SSA data for a specific program. Instead, it allows any program that might otherwise receive a negative D/E rate using SSA data to submit an alternate earnings appeal in order to have its D/E rate recalculated using different earnings data. Indeed, the GE regulations account for this possibility by stating that, even when the Department issues a D/E rate for a specific program in a notice of determination, that rate does not qualify as the Department's final decision until any such appeal is resolved. Because the current deadline to submit alternate earnings appeals is July 1, 2017, the Department has taken no final agency action with respect to any program that has indicated an intent to submit an appeal. Moreover, while the Department arguably might have

1

issued a final decision on D/E rates for programs that chose not to notice an intent to submit an appeal, Plaintiff fails to identify any member school with such a program that could establish a cognizable injury caused by the Department's use of SSA data.

Aside from its failure to satisfy the APA's final agency action requirement for an as-applied claim, Plaintiff also fails to establish that the Department acted arbitrarily or capriciously in the 2014 Final Rule when deciding to use SSA data for D/E rate calculations, in conjunction with the option of submitting alternate earnings appeals. Although Plaintiff continues to rehash arguments that were rejected in other cases, it fails to overcome the key defect in its position: As the Department observed in responding to comments on this topic, there is no existing, widely applicable data source that would be more accurate than SSA earnings for purposes of judging a program's performance in providing its students with gainful employment. The Department adequately explained the basis for choosing to rely on SSA earnings as the best data available for its D/E calculation, and courts, including this Court, have affirmed that choice when rejecting facial challenges to the 2014 Final Rule. Moreover, the regulations established the alternate earnings appeal process to provide schools with the opportunity to supplant the SSA data with alternative data specific to their own programs.

Plaintiff points to no comment during the rulemaking process urging the Department to create a special procedure to calculate D/E rates for cosmetology programs. Any such argument therefore is waived. Moreover, Plaintiff also fails to establish that cosmetology programs are unique in having graduates who are self-employed or receive tip income, such that the reasoning of prior decisions upholding the GE regulations on their face would not apply here, or that cosmetology programs should be uniquely entitled to an across-the-board percentage increase in their earnings that is not tied to any earnings data for a specific program's graduates. Numerous

vocational programs have former students whose employment share these features, but most programs, including 91% of cosmetology programs, did not have failing D/E rates. The Department did not act arbitrarily in failing to provide a special exception for cosmetology programs or in otherwise failing to treat them differently from other GE programs. Plaintiff's challenge to the use of SSA data for cosmetology programs should therefore be rejected, and judgment should be entered in the Department's favor.

## ARGUMENT

### I.    PLAINTIFF'S AS-APPLIED APA CLAIM FAILS AS A MATTER OF LAW

#### A.    Plaintiff Fails to Identify a Final Agency Action that Can Support Its Asserted As-Applied APA Claim

Plaintiff still has not identified a final agency action that would make its as-applied claim cognizable under the APA, 5 U.S.C. §§ 701-706. In its Complaint and opening brief, Plaintiff identified the Department's final rule promulgating the GE regulations, Final regulations ("2014 Final Rule"), 79 Fed. Reg. 64890 (Oct. 31, 2014), and the Department's decisionmaking process in promulgating the Rule, as the object of its purported as-applied APA challenge. *E.g.*, Compl. at 1 & ¶¶ 54-56 (asserting that "the [GE] regulations are arbitrary and capricious as applied to cosmetology [schools/programs]"); Pl. Mot. at 12 (claiming that "[i]n crafting the GE Rule, the Department arbitrarily and capriciously disregarded the significant underreporting of income in the cosmetology industry"). However, as explained in Defendant's opening brief, although the 2014 Final Rule qualifies as a "final agency action" for purposes of a facial challenge under the APA, 5 U.S.C. §§ 704, 706, Plaintiff identified no discrete final agency action through which the Department had applied the Rule to it or its members for purposes of its as-applied challenge. *See* Def. Mem. at 16-17. In its Reply, Plaintiff provides three arguments in response, but none of them identify the required final agency action for an as-applied challenge.

3

### 1.   The 2014 Final Rule Does Not Qualify as a Final Agency Action for Purposes of Plaintiff's As-Applied Claim

Plaintiff first argues that the 2014 Final Rule meets the requirements for a final agency action under *Bennett v. Spear*, 520 U.S. 154 (1997). Pl. Reply at 6-7. This argument fails because the fact that a rule may qualify as "final" for purposes of a facial challenge does not mean that it "'mark[s] the "consummation" of the agency's decisionmaking process'" with respect to a specific plaintiff, or that it determines "'rights or obligations'" with respect to that plaintiff. *See Nat'l Wildlife Fed'n v. EPA*, 945 F. Supp. 2d 39, 44 (D.D.C. 2013) (quoting *Bennett*, 520 U.S. at 177-78). Rather, in an as-applied challenge, an agency must take "some [further] action with respect to the plaintiff," beyond the mere promulgation of a rule, in order for that action to qualify as final. *Id.* at 45. In *Nat'l Wildlife Fed'n*, for example, this Court held that EPA had made no final decision with respect to the application of a regulation in the specific circumstance at issue, so the final agency action requirement was not satisfied. *Id.* (rejecting the notion that the agency's obligation to apply a regulation in a certain way "if certain events take place in the future" was sufficient).[1]

The distinction between as-applied and facial challenges, for purposes of the APA's finality requirement, is particularly clear in this case because Plaintiff seeks to challenge the

---

[1] Plaintiff makes no meaningful attempt to distinguish *Nat'l Wildlife Fed'n* from the situation here; instead, it merely observes that *Nat'l Wildlife Fed'n* relied on the *Bennett* standard, which is not in dispute. *See* Pl. Reply at 8. Plaintiff argues that a D.C. Circuit decision cited by *Nat'l Wildlife Fed'n*, *Cellular Telecomms. & Internet Ass'n v. FCC*, 330 F.3d 502, 508–09 (D.C. Cir. 2003), as well as another district court decision, *Alaska Legislative Council v. Babbitt*, 15 F. Supp. 2d 19, 25 (D.D.C. 1998), addressed different contexts but fails to explain why the analyses in those cases would not apply here. Pl. Reply at 8. Indeed, in *Cellular Telecomms. & Internet Ass'n*, 330 F.3d at 509, the D.C. Circuit explained that the limitations period for a facial challenge to a regulation runs from the date of the regulation's promulgation, while the limitations period for a challenge to a regulation "as applied" to a party runs from the date the regulation is "enforced against" the party. This Court in *Nat'l Wildlife Fed'n*, 945 F. Supp. 2d at 45, correctly recognized the relevance of this analysis to the APA's "final agency action" requirement in an as-applied challenge.

Department's alleged decision to use SSA data presumptively for D/E rate calculations. That is a facial challenge which was already presented unsuccessfully in *APSCU. v. Duncan* ("*APSCU III*"), 110 F. Supp. 3d 176, 195 (D.D.C. 2015), *aff'd*, No. 15-5190, 640 Fed. Appx. 5 (D.C. Cir. Mar. 8, 2016) ("*APSCU IV*") (unpublished). Plaintiff's opening brief also offers nothing more than the same arguments made during the rulemaking process, which the Department considered and to which it responded in the 2014 Final Rule, 79 Fed. Reg. at 64953-59.

At the same time, the Department made no final decision in the 2014 Final Rule regarding whether a *particular GE program's* status as "passing," "failing," or "in the zone" would be determined based on D/E rates calculated using SSA data, nor did it decide that *all cosmetology programs'* statuses would ultimately depend on calculations using SSA data. Rather, the 2014 Final Rule provides that SSA data will be used when calculating the "final D/E rates" set forth in notices of determination, 34 C.F.R. § 668.405(a)(6)-(7), but also permits schools to file an "alternate earnings appeal" in order for any GE program's D/E rate to be recalculated using earnings data from sources *other than* the SSA, *see id.* § 668.406. Ultimately, any GE program's status may be determined using data other than SSA data if its school files a successful alternate earnings appeal. The 2014 Final Rule therefore does not mark the consummation of the Department's decisionmaking process, with respect to the use of SSA data, for any particular program, nor did the Rule's provisions with respect to SSA data automatically result in any legal consequences, rights, or obligations for any particular GE program or group of programs. Accordingly, the 2014 Final Rule is not a final agency action for purposes of an as-applied challenge to the Department's use of SSA data.

### 2. Plaintiff Cannot Rely on the D/E Rates Issued in January 2017 as the Final Agency Action for An As-Applied Claim

In addition to arguing that the "final agency action" requirement is satisfied by the 2014 Final Rule, Plaintiff suggests for the first time that it is challenging the Department's "determination of the debt earnings rates applicable to" its member cosmetology schools. Pl. Reply at 8; *see also id.* at 7 ("plaintiffs [sic] are challenging the actual application of th[e GE] regulation to them"). Under this theory, Plaintiff contends that the Department's actions in issuing and publishing D/E rates in January 2017, and in "setting a deadline by which schools had to notice appeals of the final rates," qualify as the necessary final agency action here. *Id.*

This argument fails under the circumstances here. As an initial matter, Plaintiff's Complaint does not identify the Department's issuance of D/E rates in January 2017 as the object of its challenge.[2] An argument in a Reply brief cannot create a cognizable APA claim. *Wise v. Glickman*, 257 F. Supp. 2d 123, 128 (D.D.C. 2003) (complaint that did not clearly identify the final agency action that the plaintiff sought to challenge gave defendant inadequate notice of the nature of the claim against it).

Plaintiff's argument also fails because the Department's issuance of the January 2017 D/E rates, like the 2014 Final Rule itself, did not consummate the Department's decisionmaking process with respect to the use of SSA data. Rather, any program identified as "in the zone" or "failing" based on the Department's January 2017 D/E rate calculations using SSA data could

---

[2] Although Plaintiff mentioned the Department's January 2017 issuance of D/E rates in its Complaint, Compl. ¶¶ 27-28, the Complaint makes clear that Plaintiff's challenge is directed to the 2014 Final Rule itself. *See id.* ¶¶ 54-56 (asserting the "GE regulations" are arbitrary and capricious); *id.* at 10 (asking the court to "[d]eclare that the Department's GE regulations are arbitrary and capricious"). Defendant relied on the Complaint's characterization of Plaintiff's claim as a challenge to the 2014 Final Rule when compiling the administrative record. To the extent Plaintiff might seek to amend its Complaint to challenge some other agency action, the administrative record would likely also require amendment.

submit an alternate earnings appeal to recalculate their D/E rates using different data. 34 C.F.R. § 668.406. Indeed, the Department indicates in the GE regulations themselves that its "final decision . . . with respect to the D/E rates measure" is, "as applicable," the decision that it makes "with respect to an appeal under § 668.406." *Id.* § 668.409(b).

After the Department issued notices of determination containing final D/E rates using SSA data in January 2017, schools with programs identified as "failing" or "in the zone" were supposed to notify the Department by January 23, 2017 of their intent to submit an alternate earnings appeal. The deadline to submit such an appeal, together with alternate earnings documentation, is currently July 1, 2017.[3] Thus, the Department has not yet made a final decision to use SSA data for any program that has submitted or may submit an alternate earnings appeal. Nor did the Department's issuance of notices of determination impose any legal consequences or obligations on such programs because any requirements under the GE regulations are stayed while a school's alternate earnings appeal is pending. 34 C.F.R. § 668.406(e)(2). Although Plaintiff contends that "setting a deadline by which schools had to notice appeals" qualifies as an obligation, such procedural requirements are "different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *FTC v. Standard Oil Co*., 449 U.S. 232, 242 (1980) (holding that the obligation to respond to an administrative complaint did not qualify as a legal obligation for purposes of the final agency action analysis).

Plaintiff also argues that the requirement set forth in 34 C.F.R. § 668.410 to provide warnings regarding the potential loss of Title IV eligibility qualifies as an "obligation"

---

[3] *See* Gainful Employment Electronic Announcement #105 (Mar. 6, 2017), *available at* https://ifap.ed.gov/eannouncements/030617GEAnnounce105AddtlSubTimeAEAandGEDisReq.html .

establishing a final agency action. Pl. Reply at 7. However, even if these warnings constitute a substantive obligation under *Bennett* and *Standard Oil*, only schools with "failing" programs that chose not to submit alternate earnings appeals would face this obligation. *See* 34 C.F.R. §§ 668.406(e)(2), .410(a)(1). Plaintiff has failed to identify any school among its members that is currently required to provide such warnings. Plaintiff cannot establish associational standing based on such an asserted as-applied final agency action without identifying at least one such member. *See W. Wood Preservers Inst. v. McHugh*, 292 F.R.D. 145, 148–49 (D.D.C. 2013) (indicating that at least three judges in this District have required identification of such a member at the pleading stage).[4] Thus, even if Plaintiff had identified the Department's issuance of notices of determinations for schools that have not pursued alternate earnings appeals as the final agency action that it seeks to challenge in an as-applied APA claim, it would lack standing to pursue such a challenge. Judgment therefore should be entered in favor of the Department on this issue.

3.      **Plaintiff Cannot Avoid the Final Agency Action Requirement by Claiming that the Nature of Its Challenge, or the Challenged Action, Is Irrelevant**

Plaintiff also argues that it is irrelevant what the final agency action might be, or whether its claim is "'as-applied' or 'facial' or [some] 'admixture'" of the two, because any challenge would subject the Department's actions to arbitrary and capricious review. Pl. Reply at 9. This flawed argument ignores several important elements of an APA claim. The APA's cause of

---

[4] For purposes of standing to challenge the Department's issuance of D/E rates, Plaintiff must identify a member with an injury caused by the challenged final agency action. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 891 (1990). The only conceivable injury here appears to be potential harm that, according to Plaintiff, would result from the requirement to provide warnings. Clearly, the 91% of cosmetology programs that received passing or "in the zone" D/E rates, and that therefore do not face such a requirement, cannot assert such an injury. *See* Def. Mem. at 13&n.7. Nor can schools that have indicated an intent to submit an alternate earnings appeal since such a school, if successful in its appeal, would also not be required to provide warnings.

action *requires* a plaintiff to identify a final agency action that is the cause of the plaintiff's

alleged injury. 5 U.S.C. §§ 704, 706; *cf. Lujan*, 497 U.S. at 891 ("Under the terms of the APA,

respondent must direct its attack against some particular 'agency action' that causes it harm.").

Thus, the identification of a final agency action is a threshold requirement to bring an APA claim

and is often, as it is here, a prerequisite to determining whether the plaintiff has standing. *See*

*Nat'l Wildlife Fed'n*, 945 F. Supp. 2d at 43 ("Before the Court can consider the Plaintiff's

standing [to bring an as-applied challenge to a particular final agency action], the Court must

determine what, if any, final agency action the Plaintiff is challenging.").

    Plaintiff's identification of the final agency action also determines the standard that a

court must apply. If Plaintiff brings a facial challenge, Plaintiff must show that there is "no set of

circumstances" in which the Department's use of SSA data could be valid. *See Reno v. Flores*,

507 U.S. 292, 301 (1993). Plaintiff claims it is not "aware" of any case where a court applied the

"no set of circumstances" test to a facial APA challenge. Pl. Reply at 10. Yet both the D.C.

Circuit and this Court applied the "no set of circumstances" test when considering APA facial

challenges to the current and previous versions of the GE regulations. *Cf. APSCU III*, 110 F.

Supp. 3d at 196 (citing *APSCU v. Duncan* ("*APSCU II*"), 681 F.3d 427, 442 (D.C. Cir. 2012), in

support of its holding that the "no set of circumstances" test applied to APSCU's facial APA

challenge). Most recently, this Court specifically upheld the Department's decision in the 2014

Final Rule to use SSA data while citing the "no set of circumstances" test when rejecting

hypothetical examples where the plaintiff claimed application of the Rule could lead to absurd

results. *Id.* at 195-96. Indeed, Plaintiff concedes that it is "not arguing that the SSA data is too

flawed to be used by the Department" in calculating D/E rates for most programs. Pl. Reply at 3.

As the Court recognized in *APSCU III*, a claim that a particular application of the GE regulations

is arbitrary is better suited to an as-applied challenge. *See APSCU III*, 110 F. Supp. 3d at 196. However, bringing an as-applied challenge requires Plaintiff to identify an appropriate final agency action in order to avoid the "no set of circumstances" test.

In sum, Plaintiff's failure to identify a final agency action through which the Department has applied the GE regulations to one or more specific cosmetology programs dooms its as-applied APA claim, nor can Plaintiff overcome this defect by attempting to transform its claim into a facial challenge to the 2014 Final Rule.

**B.      Plaintiff Fails to Show that the Department's Use of SSA Data, Absent a Successful Alternate Earnings Appeal, Is Arbitrary or Capricious**

Plaintiff's claims about the Department's use of SSA data also fail on the merits. In a recent articulation of the APA's requirements with respect to an agency's selection of data, the D.C. Circuit explained that the APA does not impose "a best-available-data obligation on all agencies," and that, while an agency "cannot *ignore* new and better data," it need only "examine *the relevant data* and articulate a satisfactory explanation for its action." *Dist. Hosp. Partners, L.P. v. Burwell,* 786 F.3d 46, 56–57 (D.C. Cir. 2015) (internal quotation omitted). As described in Defendant's opening brief, the Department satisfied these requirements in the 2014 Final Rule and explained its reasoning for using the SSA data in response to comments alleging that SSA data would not produce accurate D/E rate calculations due, among other things, to underreporting of income to the IRS. Specifically, the Department concluded, after considering various suggestions by commenters and other options, that there was no "more reliable source of earnings data" available. *See APSCU III*, 110 F. Supp. 3d at 195 (recognizing that the Department decided to use SSA data "only after determining that no better data existed").[5]

---

[5] Plaintiff attempts to discount the Court's prior consideration of this issue in *APSCU III* by contending that the Court "did not address the underreporting issue" because its decision did not

Nevertheless, the Department provided programs that did not receive "passing" rates with SSA data an opportunity, through the alternate earnings appeal process, to have their D/E rates recalculated using other data sources. 79 Fed. Reg. at 64956-57. Thus, far from "ignor[ing] new and better data," *Dist. Hosp. Partners, L.P.,* 786 F.3d at 57, the Department established a mechanism for schools to submit such data and to recalculate D/E rates accordingly. The Department's consideration of these issues, and its ultimate decision to use SSA data for D/E rate calculations, subject to any school's successful alternate earnings appeal, are neither arbitrary nor capricious.

Plaintiff puts forward "three related arguments" to the contrary that are easily rebuffed. First, Plaintiff suggests that SSA data are "bad data" and have been "acknowledged by the government to be inaccurate with respect to workers in the cosmetology industry." Pl. Reply at 1. Second, Plaintiff argues that the Department failed to consider the "prevalence of underreporting of income in the cosmetology industry." *Id.* Third, Plaintiff asserts that there are "credible alternatives" that the Department failed to consider." *Id.* None of these related arguments establishes that the Department's responses to comments in the 2014 Final Rule, or its ultimate decision regarding SSA data, were arbitrary.

As an initial matter, Plaintiff's reliance on the Department's supposed

---

specifically mention that issue. Pl. Reply at 11. However, the Court cited the pages in the plaintiff's brief in that case where the issue was mentioned in a footnote. *Compare APSCU III,* 110 F. Supp. 3d at 195 (citing Pl.'s Mot. at 45, 46 in connection with the plaintiff's general argument that "there are problems with the Social Security data"), *with APSCU III,* 1:14-cv-1870-JDB, Pl. S.J. Mem., ECF No. 13, at 46 n.55 (D.D.C. filed Feb. 6, 2015) (arguing that SSA data "excludes . . . earnings of graduates who are self-employed or work in jobs that rely heavily on tips"). The reasonable presumption that the Court considered the specific arguments on this issue identified in the plaintiff's motion, even if the Court did not itemize them all individually in its decision, is not akin to a "sub silentio holding," *see* Pl. Reply at 11. Rather, the Court in *APSCU III* expressly held that the Department's decision in the 2014 Final Rule regarding the use of SSA data was reasonable. *APSCU III,* 110 F. Supp. 3d at 95.

"acknowledge[ment]" that cosmetology program graduates underreport their earnings to the IRS, and that SSA data is "bad" with respect to such programs, Pl. Reply at 1, is misplaced. The Department generally concluded that the SSA's collection of lawfully reported individual income through tax returns is widely considered "an authoritative source" of earnings data, 79 Fed. Reg. at 64957, and it specifically noted that individuals are required by law to report self-employment earnings and tips above a certain amount, *id.* at 64955-56.[6] While the Department "recognize[d] that misreported and underreported earnings can have some effect on the [SSA] earnings data," it also pointed out that "no practicable alternative" had been identified "that would eliminate these issues and provide more reliable data" such that the Department could identify "earnings of individuals who completed a particular GE program offered by a particular institution." *Id.* at 64955; *see APSCU III*, 110 F. Supp. 3d at 195. In the absence of more reliable data, the SSA data cannot properly be deemed "bad."[7] The absence of any better alternative—and Plaintiff's failure to identify any such alternative that was proposed but arbitrarily rejected

---

[6] Plaintiff incorrectly argues that the Department did not take into account the legal obligations of those with self-employment and tip income to report such income to the IRS when responding to comments regarding alleged underreporting of such income. Pl. Reply at 6. To the contrary, the Department considered these obligations when deciding to use SSA data.

[7] In addition to the Department's responses in the 2014 Final Rule, Plaintiff cites two statements submitted by the Treasury Inspector General to Congressional committees in 2006 and 2007, as well as an IRS memorandum and publications providing "tax tips" to those in the cosmetology industry, as evidence that graduates of cosmetology programs underreport earnings. *See* Pl. Reply at (citing Pl. Mot. at 6, citing Declaration of Katherine Brodie exs. 3(b)-(g), attached to Pl. Mot). Plaintiff fails to show that these materials were submitted to the Department during the rulemaking process. In addition, these general statements and guidance by the Treasury Inspector General ten years ago do not quantify the extent or distribution of such alleged underreporting. To the contrary, these documents suggest the possibility that underreporting has decreased, as IRS efforts and technological developments make it easier to track tip and cash income. *E.g.*, Brodie Decl. ex. 3(d), ECF No. 8-4, at 1275-76 (noting that the amount of reported tip income more than doubled from 1994 to 2004, discussing IRS programs in existence in 2006 to facilitate tip reporting in certain industries, and recommending that such programs be expanded within the cosmetology industry).

during the rulemaking process—dooms Plaintiff's effort to show that the 2014 Final Rule was

unreasonable with respect to cosmetology programs. *See* 79 Fed. Reg. at 64957 (concluding that

"SSA MEF data is the only source of data readily and generally available on a nationwide basis

to obtain the earnings on these cohorts of individuals").[8]

Plaintiff cites *Leather Indus. of Am., Inc. v. EPA*, 40 F.3d 392 (D.C. Cir. 1994), and

*ILGWU v. Donovan*, 722 F.2d 795 (D.C. Cir. 1983), for the proposition that the Department

should have recognized that cosmetology programs present a different circumstance requiring

different treatment in the D/E rate calculation. Pl. Reply at 3. As an initial matter, Plaintiff fails

to identify any comment during the rulemaking process suggesting that cosmetology programs

were unique and therefore required a special exception or different treatment with respect to the

use of SSA data. Absent such a comment, the issue is waived. *Nat'l Wildlife Fed'n v. EPA*, 286

F.3d 554, 562 (D.C. Cir. 2002) ("It is well established that issues not raised in comments before

the agency are waived . . . ."); *Appalachian Power Co. v. EPA,* 251 F.3d 1026, 1036 (D.C. Cir.

2001) (recognizing as "black-letter administrative law that [a]bsent special circumstances, a

---

[8] None of the comments during the rulemaking for the 2014 Final Rule that Plaintiff cites as raising potential flaws in SSA data due to underreporting of self-employment, cash, or tip income, Pl. Mot. at 8, identifies a better source of data that the Department failed to consider. *See* APC (May 27, 2014), at 54-55 [AR-H-085781 to -085782] (not proposing an alternative data source); Eric Bettinger, Imputation of Income under Gainful Employment (May 26, 2014), at 9-10 (ex. 6 to APC comments) [AR-H-085973 to -085974] (proposing use of Current Population Survey data, which Department considered and rejected, and which Plaintiff now disavows as a reasonable alternative to SSA data, see Pl. Reply at 3-4); APSCU (May 27, 2014), at 55 [AR-H-074204] (not proposing an alternative data source); AACS (May 27, 2014), at 23 [AR-H-090003] (proposing use of BLS data, which Department addressed and rejected, as option in alternate earnings appeal). Plaintiff also cites two comments that pre-date the rulemaking process for the 2014 Final Rule and are not part of the administrative record. These comments should not be considered. They also fail to identify a better source of data. *See* Shore Beauty School (Sept. 8, 2010), at 3-4 [ECF No. 8-4, at 1158-59] (referencing the possibility of future "independent studies on cosmetology incomes" but failing to identify any currently available data); Quad Partners, LLC (Sept. 9, 2010), at 10-11 [ECF No. 8-4, at 1202-03] (proposing use of BLS data).

party must initially present its comments to the agency during the rulemaking in order for the court to consider the issue" (internal quotation omitted)).

In addition, Plaintiff fails to establish the premise of this argument—that cosmetology programs present a unique situation. While commenters raising the issue of underreported income identified cosmetology as an *example* of an industry where individuals may be self-employed or receive cash or tip income, they did not suggest that cosmetology was the *only* such industry.[9] Indeed, many other vocational professions, such as massage therapy, plumbing, or accounting, are likely to include significant rates of self-employment and tip income.

Moreover, in the two cases cited by Plaintiff, unlike here, there were clear alternatives that, in the court's view, the agency unreasonably failed to choose or address. Thus, in *Leather Indus.*, the D.C. Circuit recognized that "the EPA had at hand the information necessary accurately to prevent the known risks" and failed to justify ignoring those actual data "in favor of blanket, highly conservative assumptions." 40 F.3d at 403. Similarly, in *ILGWU*, the D.C. Circuit held that the agency "failed to provide any explanation for [its] implicit rejection of alternatives" that would modify, rather than rescind, existing restrictions on homework in the knitted outerwear industry in certain circumstances. 722 F.2d at 815.

Here, in contrast, the record does not support Plaintiff's contention that there are practicable alternatives that the Department failed to address. Plaintiff refers to the "obvious alternative" of applying a uniform percentage increase to SSA earnings data for cosmetology programs, Pl. Reply at 3, but Plaintiff points to no data that would have supported such an

---

[9] *See, e.g.*, Bettinger, at 2, 10 [AR-H-085966, AR-H-085974] (identifying "cosmetologists who rent stations in salons" and "freelance artists" as two examples of self-employed graduates but recognizing that "any number of industries" may have "large numbers of individuals [who] are self-employed or have significant tip income"); Laurus Technical Institute (May 27, 2014), at 2 [AR-H-089712] (asserting that many individuals engaged in skilled trades, which may include HVAC or appliance repair, underreport cash earned from side jobs on weekends or evenings).

adjustment, nor does it explain why the adjusted D/E rates would be more accurate. Rather, Plaintiff suggests that applying a uniform percentage increase—whatever it might be—would still allow differentiation between different cosmetology programs because the underlying SSA earnings data for two schools, each multiplied by the same percentage factor, would still be different. *Id.* (citing Pl. Mot. at 9-10).

The Department rejected this proposal in the 2014 Final Rule because there was no better data supporting an across-the-board adjustment for every GE program or for any subset of GE programs. *See* 79 Fed. Reg. at 64956 ("Imputing some percentage of added earnings to account for underreported tips and other compensation could only be done by generalizations drawn from some source of data on earnings," and thus would not necessarily reflect the actual earnings of graduates of a specific program). Indeed, the Department repeatedly emphasized the importance of measuring the earnings attributable to specific GE programs in its responses. *See, e.g.*, *id.* at 64958 (explaining that the Department must "measure[e] the earnings of a particular cohort of graduates of a GE program offered by a particular institution"); *id.* at 64960 (rejecting use of BLS data because they would "not show the specific earnings of the individuals who completed a particular GE program at an institution"). In light of this concern, the Department concluded that the opportunity to submit alternate earnings appeals—which *does* allow schools to submit alternative evidence of the earnings of graduates of a specific GE program—would provide the best means to adjust for any shortcomings of SSA data. *See id.* at 64960 (alternate earnings appeals are meant to allow schools "to present evidence that the [SSA] earnings data used to calculate the D/E rates" that are identified in a school's notice of determination "[did] not capture the earnings outcomes of the students on whom the D/E rates were based"). The Department's approach, using SSA data for the Department's final D/E calculations while

providing schools with an alternate earnings appeal, was entirely reasonable and should be

upheld.[10]

## **CONCLUSION**

For the foregoing reasons and those set forth in Defendant's opening brief, the

Department respectfully requests that the Court grant Defendant's Cross-Motion for Summary

Judgment and deny Plaintiff's Motion.

Dated:  April 24, 2017                                  Respectfully Submitted,

                                                        CHAD A. READLER
                                                        Acting Assistant Attorney General
                                                        CHANNING D. PHILLIPS
                                                        United States Attorney
                                                        SHEILA M. LIEBER
                                                        Deputy Director, Federal Programs Branch

                                                         _/s/ Kathryn L. Wyer_____
                                                        KATHRYN L. WYER
                                                        Trial Attorney
                                                        United States Department of Justice
                                                        Civil Division, Federal Programs Branch
                                                        20 Massachusetts Avenue NW Room 7124
                                                        Washington, D.C. 20530
                                                        Tel.: (202) 616-8475

---

[10] In its opening brief, Plaintiff also suggested that the Department should conduct its own survey of the earnings of cosmetology program graduates. Pl. Mot. at 9. Plaintiff has cited no such suggestion during the rulemaking process, nor has it identified any case requiring an agency to create its own data in order to satisfy APA standards. Indeed, in its Reply, Plaintiff fails to pursue the notion that the Department should conduct its own survey, other than by pointing out that agencies in some instances have sought voluntarily to make adjustments to increase the accuracy of the available data. *See* Pl. Reply at 4-5; *Am. Pub. Gas Ass'n v. Fed. Power Comm'n*, 567 F.2d 1016, 1046 (D.C. Cir. 1977) (recognizing that the Commission did not act arbitrarily by using the best available data that currently existed even though it also indicated an intent to follow its own procedures to adjust the data in the future); *Mt. Diablo Hosp. v. Shalala*, 3 F.3d 1226, 1233 (9th Cir. 1993) (upholding the agency's decision to use "one imperfect database over another while seeking to develop data superior to either," pursuant to a statutory delegation of authority to the agency to develop such data). The fact that the agencies in those cases were involved in such efforts in no way suggests that the Department is required to create a new data set by conducting an independent survey here.

Fax: (202) 616-8470
Email: kathryn.wyer@usdoj.gov
*Attorneys for Defendants*